MARGARET NIVER McGANN (7951)
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
MMcGann@parsonsbehle.com
ecf@parsonsbehle.com

CHAD T. NITTA (*pro hac pending*)
BLAIR E. KANIS (*pro hac pending*)
**KUTAK ROCK LLP**
1801 California St., Suite 3000
Denver, CO 80202
Tel:  303-297-2400
Fax:  303-292-7799
chad.nitta@kutakrock.com
blair.kanis@kutakrock.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HAPPY DAY GOURMET, LLC, a Utah limited liability company,<br><br>        Plaintiff,<br><br>vs.<br><br>LIVE LOVE POP, LLC, a Delaware limited liability company,<br><br>        Defendant. | **COMPLAINT AND JURY DEMAND**<br><br>Case No. _____<br><br>The Honorable _____ |

Plaintiff Happy Day Gourmet, LLC ("Happy Day Gourmet"), by and through its undersigned counsel, and for its Complaint and Jury Demand (the "Complaint") against Defendant Live Love Pop, LLC ("Live Love Pop"), states and alleges as follows:

**PARTIES AND JURISDICTION**

1.    This is an action for trademark and trade dress infringement under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and for trade dress infringement and unfair competition under the statutory and common laws of the State of Utah.  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, as well as 28 U.S.C. §§ 1331, 1338(a) and 1367.

2.    Plaintiff Happy Day Gourmet is a Utah limited liability company with its principal place of business located in Salt Lake City, Utah.

3.    Upon information and belief, Defendant Live Love Pop is a Delaware limited liability company with its principal place of business located in Addison, Texas.

4.    Live Love Pop markets and sells its food products, including gourmet popcorn, with packaging and/or marketing materials that contain infringing text and design in at least 26 states.  Live Love Pop's popcorn products are available for purchase at HomeGoods, T.J. Maxx, and Marshalls.  HomeGoods, T.J. Maxx, and Marshalls each have locations in Utah.  Live Love Pop's products are also available for purchase in the State of Utah at Live Love Pop's website, www.livelovepop.com.   Live Love Pop derives revenue from products offered for sale, sold and/or used in the State of Utah.  On information and belief, Live Love Pop has also specifically targeted consumers in Utah by partnering with a Utah-based lifestyle blogger to promote its products and to host a popcorn giveaway.

5.    Venue is proper before this Court under 28 U.S.C. § 1391(b) because Live Love Pop's products sold with packaging and/or marketing materials that contain infringing text and design are available for sale in this District in retails stores as well as via the Internet, and Live

Love Pop's wrongful and infringing conduct has caused injury to Happy Day Gourmet within this District.

## GENERAL ALLEGATIONS

6.     Happy Day Gourmet incorporates by reference the allegations contained in the previous paragraphs as if fully repeated and restated herein.

7.     Happy Day Gourmet is a local, Salt Lake City-based, business that sells gourmet flavored popcorn snacks under the trademark Pop Art®.  Using organic and natural ingredients, Happy Day Gourmet takes a simple kernel of corn and adds an unusual array of spices and seasonings to create memorable flavors, including Rosemary Truffle, White Pepper Parmesan, Nori Sesame, Thai Coconut Curry, Cheddar Jalapeno, and Tandoori Yogurt.

8.     Happy Day Gourmet was founded by husband-and-wife team Mike and Venessa Dobson.  While living in Brooklyn, New York—where Venessa served as the director of a non-profit organization and Mike worked as an independent photographer/designer—the Dobsons began experimenting with the vast array of spices that were widely available in their diverse neighborhood.  They believed that popcorn offered a natural, neutral flavor canvas for their different spice combinations and enjoyed creating uniquely flavored snacks for small parties in the area.  After placing in a contest for Next Big Small Brand of New York City, the duo knew they were on to something.

9.     After relocating to Salt Lake City, Utah, the Dobsons decided to make their dream of starting a popcorn company a reality.  In 2011, they formally created their popcorn business and began selling their flavored snacks at local farmers markets.

10.     The Dobsons love elevating the all-American snack with fun and out-of-the-box flavor combinations that turn popcorn into a savory "taste of art."

11.     Utilizing Mike's background in design, the Dobsons carefully selected every element of their brand and packaging to capture their unique style and to live up to the artistically-influenced brand name Pop Art®.

12.     Happy Day Gourmet first used the Pop Art® trademark on November 1, 2011. The mark's first use in interstate commerce occurred on March 1, 2012.

13.     Since then, Mike and Venessa Dobson have worked tirelessly to expand their Pop Art® brand.  Pop Art® popcorn is now stocked by many major grocery chains, including Whole Foods, Kroger, Safeway, Harmons, and Associated Food Stores, and by health food and specialty food stores throughout the country.  Today, Pop Art® popcorn is sold in all 50 states, and internationally in Mexico, Canada, Bermuda, and the Philippines.  Pop Art® popcorn is also available worldwide on Happy Day Gourmet Gourmet's online store, www.popartsnacks.com.

14.     Happy Day Gourmet has taken steps to protect its intellectual property rights, including, without limitation, by restricting usage of its trademark rights to authorized users, and enforcing its rights against infringing users.

### Pop Art® Trademarks & Trade Dress

15.     On November 15, 2011, Happy Day Gourmet filed its application with the U.S. Patent and Trademark Office for federal trademark protection of the standard word mark "POP ART" in connection with salty snacks, namely popcorn, popcorn seasoning and unpopped popcorn kernels, and ready-to-eat popcorn (the "Pop Art Word Mark").

4823-0365-6490.v1

16.     The Pop Art Word Mark was placed on the principal trademark register on November 27, 2012, with Registration No. 4,251,373.

17.     A true and correct copy of the Certificate of Registration for the Pop Art Word Mark is attached hereto as **Exhibit 1**.

18.     On July 30, 2013, Happy Day Gourmet filed its application with the U.S. Patent and Trademark Office for federal trademark protection of a design plus words, letters, and/or numbers mark that consists of a cyan-colored rectangle with a white line inside border, a stamp perforation pattern around the outside of the rectangle consisting of intermittent, half-circle indentations, and the following designs inside the white line: a yellow popcorn shape with four rounded sides and a half-tone pattern of black and white dots within the yellow shape; a small yellow circle located on lower left side of yellow popcorn shape; the words "POP ART" in pink, upper case letters beneath the yellow popcorn shape; a half-tone pattern of cyan dots within the words "POP ART"; and the words "gourmet popcorn" in white upper case letters beneath the word "POP ART" (the "Pop Art Design Mark").  The Pop Art Design Mark was filed in connection with flavor-coated ready-to-eat popcorn, ready-to-eat popcorn, popcorn, and popcorn seasoning.

19.     The Pop Art Design Mark was first used in interstate commerce on January 15, 2012.  It was placed on the principal trademark register on August 5, 2014, with Registration No. 4,578,816.

20.     A true and correct copy of the Certificate of Registration for the Pop Art Design Mark is attached hereto as **Exhibit 2**.

21.     Happy Day Gourmet sells its Pop Art® popcorn in two types of distinctive packaging.  It first began selling its popcorn in a stand-up "pouch bag" that has a resealable strip at the top of the pouch.  Over time, Happy Day Gourmet introduced a second package in the form of a "pillow pack" that seals air inside the package and has crimping on the top and bottom of the package.  Examples of each type of packaging can be seen in **Figure 1 below**.



**Figure 1. Pop Art® pouch bags (top) and Pop Art® pillow packs (bottom).**

22.     Since 2012, all of the packages of Pop Art® popcorn have shared several common elements and have prominently displayed the Pop Art Design Mark at the top center of each package.  ***See,*** **Figure 2.**

4823-0365-6490.v1



**Figure 2.  A detailed image of the Pop Art Design Mark.**

23.     Below the Pop Art Design Mark, centered on the front of the package, is the name of the popcorn flavor, followed by a general description of the product: "GOURMET POPCORN."

24.     A photographic depiction of popped popcorn kernels appears toward the bottom of each package, framed on either side by small renderings of ingredients that contribute to the popcorn's unique flavor.

25.     Below the photographic depiction of popcorn, each package includes details about the package size and weight in small lettering.

26.     Each flavor of popcorn has packaging with a distinct color scheme.  Each flavor has one dominant color for the background: red, orange, lime green, dark green, blue or purple. The background, rather than being one solid color, has texture, achieved with patterns such as stripes and dotted popcorn kernels, in hues that deviate slightly from the dominant background color (e.g., light blue kernels and stripes, set against a darker blue background).

4823-0365-6490.v1

27.     On the pillow packs, this background pattern extends fully to the edges of the package.  The bottoms of the pillow packs feature an abstract grid of halftone dots, with the size of each dot decreasing with each additional row.  Like the background stripes and kernels, the dots are colored in a hue that deviates slightly from the background color (e.g., light purple dots against a dark purple background).

28.     On the pouch bags, by contrast, the Pop Art Design Mark, text and background pattern appear in a rectangle on the front of the package, framed on all sides by a craft-paper look.

### Live Love Pop Trademark and Trade Dress

29.     More than two years after the Pop Art® trademark was placed on the principal register, Live Love Pop officially registered the mark "Live Love Pop."

30.     Like Happy Day Gourmet, Live Love Pop sells popcorn in different flavors: truffle salt, sea salt, lime fresco, and salt and vinegar.

31.     Like Happy Day Gourmet, Live Love Pop began selling its popcorn in a brown, resealable "pouch bag" with an artistic design on the front.  ***See,* Fig. 3 below with images of the Pop Art® resealable pouch bag and Live Love Pop's resealable pouch bag.**

8





**Fig. 3.  Images of Pop Art® resealable pouch bags and Live Love Pop resealable pouch bags.**

32.     Also like Happy Day Gourmet, Live Love Pop later began selling its popcorn in pillow packs.  *See,* **Fig. 4 below with images of the Pop Art® pillow pack and Live Love Pop's pillow pack.**

9



**Fig. 4.  Images of Pop Art® pillow packs and Live Love Pop pillow packs.**

33.     Live Love Pop's packaging is substantially similar to that of Pop Art®, creating a

likelihood of confusion in the market.  The numerous common elements between the Pop Art®

and Live Love Pop packages are clearly demonstrated in **Figures 3 and 4** above.

34.     Like Pop Art® packages, all Live Love Pop packages display the company's logo centered at the top of each bag in a tall, rectangular box.  The bottom half of the Live Love Pop logo is dominated by the word "POP" in vibrant, block lettering that is very similar to the lettering used in the Pop Art Design Mark.  Also like the Pop Art Design Mark, a tagline appears below the word "POP" in small capital letters, in a thin font that appears to be strikingly similar to the font used by Pop Art® in its tagline.  Instead of the words "GOURMET POPCORN," Live Love Pop's packages say, "THE ART OF POPCORN," a phrase which causes additional confusion as a result of its similarity to the Pop Art® trademarked brand.  The top and bottom edges of Live Love Pop's logo have a strikingly similar stamp perforation pattern as the border of the Pop Art Design Mark.

35.     Like Pop Art® packages, Live Love Pop's packages display the name of the flavor directly below the rectangular logo, centered on the front of the package, followed by a general description of the product.  Instead of the words "GOURMET POPCORN," Live Love Pop's packages say "ALL-NATURAL POPCORN" in a strikingly similar font.

36.     Like Pop Art® packages, each Live Love Pop package has a photographic depiction of popped popcorn kernels toward the bottom of the package, framed on either side by additional written information.

37.     Like Pop Art® packages, each Live Love Pop package includes additional text in small letters below the photographic representation of kernels.

38.     Like Pop Art® packaging, the packaging for each Live Love Pop popcorn flavor has packaging with a distinct color scheme.  Each flavor has one dominant color for the background—lime green, blue and purple—and the colors chosen by Live Love Pop are

11

strikingly similar to those used by Pop Art®.  Also, like Pop Art® packages, the background of each Live Love Pop package, rather than being one solid color, has texture, achieved with patterns such as stripes and dots, in hues that deviate slightly from the dominant background color (e.g., light blue dots and stripes, set against a darker blue background).

39.     Like Pop Art® pouch bags, Live Love Pop pouch bags feature a logo, text and background within a rectangle, framed on all sides by the strikingly similar craft-paper look.

40.     Like the Pop Art® packages with halftone dots that decrease in size with each row on pillow packs, Live Love Pop's packaging features a grid of halftone dots that decrease in size with each row, and each dot is similarly rendered in a variation of the background color (e.g., dark purple dot against a lighter purple background).  The columns formed by the receding dots on Live Love Pop's packages mimic the stripes in the background of Pop Art® packages.  The dots on Live Love Pop's packages not only directly copy the dots on Pop Art® packages, but the Live Love Pop dots mimic the texture of the Pop Art® background popcorn kernels and the highlighting and shading in the Pop Art® logo.

41.     The background pattern on Live Love Pop pillow packs extends fully to the edges, as it does on Pop Art® pillow packs.

42.     The overall visual impression of Live Love Pop's packaging is strikingly similar to the impression given by the Pop Art® packaging, with each element of the design aligned in almost the same manner.  As depicted in **Figures 3 & 4**, the color schemes, shapes, borders, alignment, lettering, contrasting fonts and font sizes, photographic elements, framing elements, textured backgrounds, and use of halftone, are all strikingly similar.

4823-0365-6490.v1

43.     In addition, both companies use word marks, packaging, design elements and/or marketing materials that feature and closely connect "pop" with "art."  By including the words "The Art of Popcorn" in its logo, text, packaging, and/or marketing materials, Live Love Pop evokes, references, borrows, and trades upon the Pop Art Word Mark, Pop Art Design Mark, packaging and/or marketing materials and causes the likelihood of confusion in the market.

44.     Live Love Pop further strengthens its connection to Pop Art® and *Happy* Day Gourmet by including the phrase "HAPPINESS IS IN THE BAG" on its packages and, upon information and belief, Life Love Pop filed an application with the U.S. Patent and Trademark Office on September 24, 2015 for federal trademark protection of this phrase.

### The Dobsons Become Aware of Live Love Pop

45.     On or around January 2015, the Dobsons first became aware of Live Love Pop's products, marks, packaging, and/or marketing materials after seeing some images online.

46.     The Dobsons instantly recognized the text and design in Live Love Pop's packaging and/or marketing materials as copying Happy Day Gourmet's trademarks, trade dress, packaging, design and/or marketing materials.

47.     Prior to this infringing conduct by Live Love Pop, upon information and belief, Happy Day Gourmet's trademarks, text, and design in its packaging and/or marketing materials were unique in the gourmet popcorn industry and associated solely with Happy Day Gourmet.

48.     To address their concerns, the Dobsons engaged counsel to contact Live Love Pop and request that Live Love Pop cease use of its infringing packaging.  In April 2015, Happy Day Gourmet's counsel sent a notice of infringement to Live Love Pop.

49.     After Happy Day Gourmet's initial notice of infringement was sent to Live Love Pop, the Dobsons' concerns were further confirmed when they were contacted by a third party who had seen Live Love Pop's products in a store in New York.  The third party expressed concern to the Dobsons that Live Love Pop's products could be mistaken for Pop Art® products.

50.     Live Love Pop did not respond to Happy Day Gourmet's initial notice of infringement letter nor did it respond to the follow-up letter that Happy Day Gourmet's counsel sent in June 2015.  Counsel for Happy Day Gourmet sent a third letter on July 13, 2015.

51.     On July 20, 2015, Live Love Pop finally responded to Happy Day Gourmet's notice of infringement by denying that any infringement existed.

52.     Despite Live Love Pop's confirmed receipt of notice of infringement by Happy Day Gourmet, Live Love Pop has willfully continued its infringing activity.

**Confusion Between Pop Art® and Live Love Pop At Trade Shows**

53.     In June 2015, the Happy Day Gourmet exhibited at the Summer Fancy Food Show, a major industry trade show, in New York City.

54.     Live Love Pop also exhibited at the trade show.

55.     On information and belief, the Summer Fancy Food Show was the first time that Live Love Pop presented its popcorn products to the food industry.  Specifically, Live Love Pop displayed its popcorn in stand-up pouch bags that contained striking similarities to the Pop Art® pouch bags, as described above.

56.     At the trade show, the Dobsons heard from several attendees that they were confused about whether Live Love Pop and Pop Art® were distinct products.

57.     In September 2015, both Happy Day Gourmet and Live Love Pop attended another food trade show, Natural Products Expo East, held in Baltimore, Maryland.

58.     At Expo East, Live Love Pop unveiled a new type of packaging—a pillow package which bore a striking resemblance to the Pop Art® pillow packs, as described above.

59.     Several attendees at Expo East expressed confusion about Pop Art® and Live Love Pop to the Dobsons.  The Dobsons further received feedback from another attendee that he thought Live Love Pop was affiliated with Pop Art® and that Pop Art® had just made some minor changes to its packaging.

60.     As a result of the substantial similarities between the Pop Art® and Live Love Pop products and logos, text, and design elements in packaging and/or marketing materials, sophisticated industry professionals at trade shows and grocery buyers have expressed concerns that consumers in the market may be confused about, among other things, the affiliation between Live Love Pop and Pop Art® products and Happy Day Gourmet.

61.     Among others, Happy Day Gourmet has heard from grocery store buyers that Live Love Pop's packaging is confusingly similar to Happy Day Gourmet's.

62.     Similarly, the general public is likely to be deceived or confused about the source of Live Love Pop popcorn as a result of the substantial similarity between Happy Day Gourmet's and Live Love Pop's products and logos, text, and design elements in packaging and/or marketing materials.

63.     Moreover, as a result of these substantial similarities and the resulting confusion in the market, Live Love Pop has unfairly competed with Happy Day Gourmet by trading on Happy Day Gourmet's goodwill and reputation in the niche gourmet popcorn industry.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement, Lanham Act, 15 U.S.C. § 1114)

64.     Happy Day Gourmet incorporates by reference the allegations contained in the previous paragraphs as if fully repeated and restated herein.

65.     Upon information and belief, Live Love Pop has directly infringed and is still directly infringing Happy Day Gourmet's registered Pop Art Word Mark under 15 U.S.C. § 1114 by making, using in commerce, offering for sale, distributing and/or advertising its popcorn products with the words "pop" and "art," without Happy Day Gourmet's consent, including without limitation, inclusion of the phrase "The Art of Popcorn" in Live Love Pop's logo, marketing materials, and on all of Live Love Pop's popcorn packaging.

66.     Upon information and belief, Live Love Pop has directly infringed and is still directly infringing Happy Day Gourmet's registered Pop Art Design Mark under 15 U.S.C. § 1114 by making, using in commerce, offering for sale, distributing and/or advertising its popcorn products with a logo that is confusingly similar to the Pop Art Design Mark without Happy Day Gourmet's consent, including without limitation, inclusion of a rectangular logo with a stamp perforation pattern on the top and bottom and use of the colors yellow, pink, cyan, and black with the phrase "The Art of Popcorn" on marketing materials and on all of Live Love Pop's popcorn packaging.

67.     By making, using in commerce, offering for sale, distributing and/or advertising its products in the manner described above, Live Love Pop has willfully infringed on Happy Day Gourmet's registered trademarks, with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.  Live Love Pop did not stop its unlawful and unfair practices even after receiving notice of infringement sent by Happy Day Gourmet.

4823-0365-6490.v1

68.     The public is likely to be confused or deceived by Live Love Pop's conduct.  Both confusion and concerns about actual confusion by consumers in the market with regard to the source and/or affiliation of the Live Love Pop and Pop Art® products, have already been expressed, including by sophisticated food industry professionals at trade shows and grocery buyers.

69.     Happy Day Gourmet seeks all remedies available under 15 U.S.C. § 1114, including, but not limited to, injunctive relief, profits and/or damages.

### SECOND CLAIM FOR RELIEF
**(Unfair Competition, Lanham Act, 15 U.S.C. § 1125(a))**

70.     Happy Day Gourmet incorporates by reference the allegations contained in the previous paragraphs as if fully repeated and restated herein.

71.     In connection with its promotion and offer for sale of its products, including on its website and in retails stores such as Home Goods, Live Love Pop has used in commerce, one or more words, terms, names, symbols, and/or devices, or a combination thereof, including without limitation, logo, text, and design elements in its packaging and/or marketing materials, that are strikingly similar to those of Happy Day Gourmet, including without limitation the phrase "The Art of Popcorn" and substantial similarities in text, design, color and texture to the Pop Art® logo, packaging and marketing materials.

72.     This use by Live Love Pop constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact as to the origin, source, sponsorship, approval and/or affiliation, of Live Love Pop and Pop Art® products.

73.     Live Love Pop's unauthorized actions are likely to continue to cause confusion, or to cause mistake, or to deceive as to the origin, source, sponsorship, approval and/or affiliation, of Live Love Pop and Pop Art® products.

74.     Both confusion and concerns about actual confusion by consumers in the market with regards to the origin, source, sponsorship, approval, and/or affiliation of the Live Love Pop and Pop Art® products have already been expressed, including by sophisticated food industry professionals at trade shows and grocery buyers.

75.     The Pop Art® trademarks and trade dress, including the Pop Art Work Mark, Pop Art Design Mark, packaging and marketing materials, have a secondary meaning associated with Happy Day Gourmet and its reputation and goodwill in the niche gourmet popcorn industry and are inherently distinctive and not functional.

76.     Live Love Pop's unauthorized actions constitute unfair competition in a knowing, willful, intentional, and bad faith violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

77.     Live Love Pop's unlawful actions have caused irreparable injury and commercial harm to Happy Day Gourmet.

78.     Happy Day Gourmet seeks all remedies available under 15 U.S.C. § 1125, including, but not limited to, injunctive relief, profits and/or damages.

### THIRD CLAIM FOR RELIEF
#### (Unfair Competition, Utah Code Ann. § 13-5a-103)

79.     Happy Day Gourmet incorporates by reference the allegations contained in the previous paragraphs as if fully repeated and restated herein.

80.     Live Love Pop's intentional and willful actions violate Utah's Unfair Competition Act because the logo, packaging, design, marketing, and/or sale of Live Love Pop popcorn, in

packaging and marketing materials confusingly similar to the Pop Art® packaging, is an intentional, unlawful and unfair act that diminishes the value of Happy Day Gourmet's intellectual property and is infringement of Happy Day Gourmet's trademarks and trade dress.

81.     Live Love Pop's logo, text, and design elements in its packaging and/or marketing materials create a likelihood of confusion for the general public and other industry players.  Both confusion and concerns about actual confusion by consumers in the market with regards to the origin, source, sponsorship, approval, and/or affiliation of the Live Love Pop and Pop Art® products have already been expressed, including by sophisticated food industry professionals at trade shows and grocery buyers.

82.     The distinctiveness of the Pop Art® trademarks, packaging, and marketing materials in the market has been injured by Live Love Pop.

83.     As permitted under Utah Code Ann. § 13-5a-103(1)(b), Happy Day Gourmet seeks actual damages, costs and attorney fees, and punitive damages.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**(Deceptive Trade Practices, Utah Code Ann. § 13-11a-3)**

84.     Happy Day Gourmet incorporates by reference the allegations contained in the previous paragraphs as if fully repeated and restated herein.

85.     Live Love Pop's logo, text, and design elements in its packaging and/or marketing materials create a likelihood of confusion for the general public and other industry players. Both confusion and concerns about actual confusion by consumers in the market with regards to the origin, source, sponsorship, approval, and/or affiliation of the Live Love Pop and Pop Art® products have already been expressed, including by sophisticated food industry professionals at trade shows and grocery buyers.

86.     Happy Day Gourmet seeks to enjoin Live Love Pop from continuance of these deceptive trade practices.

87.     Happy Day Gourmet seeks actual damages, or $2,000, whichever is greater, as well as punitive damages, and costs and attorney fees, as provided in Utah Code Ann. §§ 13-11a-4(2) and (4).

88.     Happy Day Gourmet also seeks an order directing Live Love Pop to promulgate corrective advertising, as provided in Utah Code Ann. § 13-11a-4(3).

## FIFTH CLAIM FOR RELIEF
### (Trademark and Trade Dress Infringement, Utah Common Law)

89.     Happy Day Gourmet incorporates by reference the allegations contained in the previous paragraphs as if fully repeated and restated herein.

90.     Upon information and belief, Live Love Pop has directly infringed and is still directly infringing Happy Day Gourmet's trademark rights under Utah common law by making, using in commerce, offering for sale, distributing and/or advertising its popcorn products with the words "pop" and "art," without Happy Day Gourmet's consent, including without limitation, inclusion of the phrase "The Art of Popcorn" in Live Love Pop's logo, marketing materials, and on all of Live Love Pop's popcorn packaging.

91.     Upon information and belief, Live Love Pop has directly infringed and is still directly infringing Happy Day Gourmet's trade dress rights under Utah common law by making, using in commerce, offering for sale, distributing and/or advertising its popcorn products with a logo, text, and design elements in its packaging and/or marketing materials that are strikingly similar to those of Happy Day Gourmet and that constitute protectable trade dress.

92.     Happy Day Gourmet has a protectable interest in its trademarks and trade dress, which have been used in commerce since 2012.

93.     The Pop Art® trademark and trade dress operate as a designation of source of the products.

94.     The public is likely to be confused or deceived by Live Love Pop's conduct.  Both confusion and concerns about actual confusion by consumers in the market with regards to the origin, source, sponsorship, approval, and/or affiliation of the Live Love Pop and Pop Art® products have already been expressed, including by sophisticated food industry professionals at trade shows and grocery buyers.

95.     Happy Day Gourmet seeks all remedies, including injunctive relief and monetary damages, that the Court deems proper under Utah common law.

## SIXTH CLAIM FOR RELIEF
### (Unfair Competition, Utah Common Law)

96.     Happy Day Gourmet incorporates by reference the allegations contained in the previous paragraphs as if fully repeated and restated herein.

97.     Happy Day Gourmet's Pop Art Word Mark, Pop Art Design Mark, and inherently distinctive packaging, design, and/or marketing materials operate as a designation of source for its products.

98.     Live Love Pop's intentional, willful and knowing imitation of the Pop Art Word Mark, Pop Art Design Mark, packaging, design, and/or marketing materials is likely to mislead the public, including purchasers, as to the designation of source of both Live Love Pop's and Happy Day Gourmet's products and affiliation between the companies where none exists.

99.     Both confusion and concerns about actual confusion by consumers in the market with regards to the origin, source, sponsorship, approval, and/or affiliation of the Live Love Pop and Pop Art® products have already been expressed, including by sophisticated food industry professionals at trade shows and grocery buyers.

100.    As a result of its actions, Live Love Pop has engaged in unfair competition by trading on Happy Day Gourmet's established presence, reputation and good will in the industry.

101.    Happy Day Gourmet seeks any and all relief, including injunctive relief and monetary damages, the Court deems proper for this violation under the laws of the State of Utah.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Happy Day Gourmet prays for judgment against Defendant Live Love Pop as follows:

1.     That Live Love Pop has willfully infringed Happy Day Gourmet's federally protected trademarks and engaged in unfair competition in violation of the Lanham Act;

2.     That Live Love Pop has willfully infringed Happy Day Gourmet's trademarks and trade dress protected under the statutes and common law of the State of Utah;

3.     That an accounting be had for the damages caused Happy Day Gourmet by the infringing activities of Live Love Pop, and that such damages include damages for lost profits;

4.     That Happy Day Gourmet be granted permanent injunctive relief restraining and enjoining Live Love Pop and its officers, agents, servants, employees, and those persons in active concert or participation with them, from infringing the Pop Art® trademark and trade dress, including without limitation, restraining and enjoining the advertising, marketing, selling

4823-0365-6490.v1

and/or offering for sale of the Live Love Pop products so long as they infringe on Happy Day Gourmet's trademarks or trade dress or unfairly compete with Happy Day Gourmet;

5.      That Live Love Pop be directed to destroy all infringing trade dress, packaging, and/or marketing materials, and remove images of the same, or any infringing text and design, from Live Love Pop's website(s), posts, social media accounts, and/or marketing materials;

6.      That Live Love Pop be directed to promulgate corrective advertising, as provided in Utah Code Ann. § 13-11a-4(3);

7.      That Happy Day Gourmet be awarded money damages in an amount to be proven at trial and pre and post judgment interest on such damages;

8.      That Happy Day Gourmet be awarded any applicable statutory penalties;

9.      That Happy Day Gourmet be awarded its attorneys' fees, costs and expenses in this action; and

10.     That Happy Day Gourmet be awarded such other relief as the Court may deem equitable and just.

## JURY DEMAND

Plaintiff Happy Day Gourmet, LLC demands a jury trial on all issues so triable.

DATED November 3, 2015.

/s/ *Margaret Niver McGann*
MARGARET NIVER McGANN
PARSONS BEHLE & LATIMER

Attorneys for Plaintiff

4823-0365-6490.v1